U.S. [FILED]
SA[...]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

DEC 31   [...]

CLERK_____
SO. DIST. OF GA.

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and THE STATE OF GEORGIA | ) ) ) | **C V 2 1 4 - 1 8 5** |
|  | ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | Civil Action No. _____ |
| RENESSENZ, LLC, f/k/a LYONDELLBASSELL FLAVORS & FRAGRANCES, LLC | ) ) ) ) ) |  |
| Defendant. | ) ) |  |

### COMPLAINT

Plaintiffs the United States of America, by authority of the Attorney General of the

United States, at the request of the Administrator of the United States Environmental Protection

Agency ("EPA"), and the State of Georgia, by and through the Attorney General for the State of

Georgia, at the request of the Director of the Environmental Protection Division of the Georgia

Department of Natural Resources ("GA EPD"), ("Plaintiffs") allege as follows:

### NATURE OF THE CASE

1.    This is a civil action by the United States and State of Georgia against Renessenz,

LLC ("Defendant") for injunctive relief arising from the generation, storage,

management, and disposal of hazardous wastes at a facility on Colonel's Island in

Glynn County, Georgia.

2.  This complaint is filed pursuant to Georgia Hazardous Waste Management Act,
    O.C.G.A. §§ 12-8-60 et seq., ("GHWMA") and the Resource Conservation and
    Recovery Act, ("RCRA"), 42 U.S.C. § 6901 et seq.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.
    §§ 1331 and 1345, and 42 U.S.C. § 6928.

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391, because the Defendant
    conducts business in this District and the violations occurred in this District.

## DEFENDANT

5.  Renessenz, LLC is a limited liability company organized and existing under the laws
    of the State of Delaware, authorized on January 28, 2011 to do business in the State of
    Georgia, and is a "person" as defined in 42 U.S.C. § 6902(15), O.C.G.A.
    § 12-8-62(18) and 40 C.F.R. § 260.10.

6.  Renessenz, LLC is the current "owner" and "operator" of a facility located at 209
    SCM Road, on Colonels Island, in Glynn County, Georgia (the "Facility"), as those
    terms are defined in 40 C.F.R. § 260.10 and Rule 391-3-11-.02 of the Georgia
    Hazardous Waste Management Rules.

7.  Millennium Specialty Chemicals, Inc. ("MSCI") was the owner and operator of the
    Facility in 2008 when EPA undertook a RCRA Compliance Evaluation Inspection
    ("CEI") of the Facility and found that the Facility was operating in violation of RCRA
    regulations.

8.  MSCI filed for protection from creditors under Chapter 11 of the U.S. Bankruptcy
    Code on January 6, 2009 in the U.S. Bankruptcy Court for the Southern District of

2

New York (Case No. 09-10076). The United States filed a claim in the bankruptcy proceeding representing EPA's penalty for MSCI's violations described herein.

9.  Ownership of the Facility was transferred to LyondellBasell Flavors & Fragrances, LLC upon confirmation of MSCI's Third Amended Plan of Reorganization on or about April 30, 2010.

10. In December 2010, LyondellBasell Flavors & Fragrances, LLC, was acquired by Pinova Holdings, Inc., and on December 22, 2010, was renamed Renessenz, LLC.

## STATUTORY AND REGULATORY AUTHORITY
## RESOURCE CONSERVATION AND RECOVERY ACT

11. RCRA, enacted in 1976, amended the Solid Waste Disposal Act of 1965. Subtitle C of RCRA, 42 U.S.C. §§ 6901-6939b, authorized the "cradle-to-grave" regulation of hazardous waste. RCRA was amended in 1984 by the Hazardous Waste and Solid Waste Amendments ("HSWA"), Pub. L. 98-616, which added additional requirements. Pursuant to its authority under RCRA, EPA has promulgated regulations at 40 C.F.R. Parts 260-280 applicable to hazardous waste generators, transporters, and owners and operators of treatment, storage and disposal facilities ("TSD facilities").

12. RCRA Section 3006, 42 U.S.C. § 6926, provides that a state may obtain federal authorization to administer the RCRA hazardous waste program in that state. Pursuant to Section 3006 of RCRA, 42 U.S.C. § 6926, the State of Georgia received final authorization to administer certain portions of the State hazardous waste program in lieu of the federal program set forth in RCRA. The provisions of the Georgia hazardous waste management program, found at Georgia Hazardous Waste Management Act §§ 12-8-60 et seq., and at Georgia Hazardous Waste Management

3

Rules ("Ga. Comp. R. & Regs."), Rules 391-3-11-.01 et seq., have become requirements of Subtitle C of RCRA and are thus enforceable by the United States, pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), upon notification to the State of Georgia. Such notification was given to the State of Georgia.

13.     RCRA and its attendant regulations provide detailed requirements governing the activities of persons who generate hazardous waste and persons who are lawfully permitted to store, treat and dispose of hazardous waste. They generally prohibit the treatment, storage and disposal of hazardous waste without a permit or without having achieved interim status. Section 3005 of RCRA, 42 U.S.C. § 6925 and O.C.G.A. § 12-8-66(a) of the GHWMA.

14.     Generators of hazardous waste are regulated under three broad categories or classes, depending on the amount of hazardous waste generated monthly. A Conditionally Exempt Small Quantity Generator ("CESQG") generates no more than one kilogram of acute hazardous waste or 100 kilograms of total hazardous waste per month, and as a practical matter is largely unregulated under RCRA. Ga. Comp. R. & Regs. 391-3-11-.07(1) [40 C.F.R. § 261.5]. A Small Quantity Generator ("SQG") is a person that generates greater than 100 kilograms but less than 1,000 kilograms of hazardous waste per month but no more than one kilogram of acute hazardous waste per month, and typically may accumulate hazardous waste on-site for 180 days or less without a permit or having achieved interim status, and is subject to SQG regulations under Ga. Comp. R. & Regs. 391-3-11-.08(1) [40 C.F.R. Part 262 (40 C.F.R. § 262.34(d))]. A Large Quantity Generator ("LQG") of hazardous waste is a person that generates more than 1,000 kilograms of hazardous waste per month or more than one kilogram of

4

acute hazardous waste and is subject to more extensive waste management requirements in Ga. Comp. R. & Regs. 391-3-11-.08(1) [40 C.F.R. Part 262]. These regulations require, among other things, EPA ID Numbers, standards for storage, biennial reporting, personnel training, a contingency plan and emergency procedures, and limit the time waste can accumulate at the site. Ga. Comp. R. & Regs. 391-3-11-.08(1) [40 C.F.R. Part 262].

15.     A generator of solid waste is required to determine whether its waste is hazardous waste. Ga. Comp. R. & Regs. 391-3-11-.08(1) [40 C.F.R. § 262.11]. The generator must first determine if the waste is excluded from regulation under Ga. Comp. R. & Regs. 391-3-11-.07(1) [40 C.F.R. § 261.4]. If the waste is not excluded, the generator must determine whether the waste is a "listed" hazardous waste set forth in Ga. Comp. R. & Regs. 391-3-11-.07(1) [40 C.F.R. Part 261, Subpart D]. If the waste is not "listed" in Subpart D, the generator must then determine, either by testing or by application of the generator's knowledge of the waste, if the waste exhibits any of the characteristics of ignitability, reactivity, corrosivity, or toxicity established in Ga. Comp. R. & Regs. 391-3-11-.07(1) [40 C.F.R. § 261, Subpart C] and might therefore be a "characteristic" hazardous waste under Subpart C. Ga. Comp. R. & Regs. 391-3-11-.08(1) [40 C.F.R. § 262.11].

16.     Any facility involved in the treatment, storage, or disposal of hazardous waste must obtain a permit or have achieved interim status. Facility owners and operators with interim status must comply with interim status standards set forth in Ga. Comp. R. & Regs. 391-3-11-.10(1) [40 C.F.R. Part 265]. 40 C.F.R. § 270.1. The minimum acceptable national standards for the management of hazardous waste set out in Ga.

5

Comp. R. & Regs. 391-3-11-.10(2) [40 C.F.R. Part 264] apply to owners and operators of all facilities which treat, store, or dispose of hazardous waste, Ga. Comp. R. & Regs. 391-3-11-.10(2) [40 C.F.R. § 264.1], except as specifically provided otherwise in Ga. Comp. R. & Regs. 391-3-11-.10(2) [40 C.F.R. Part 264] or 391-3-11-.07(1) [40 C.F.R. Part 261]. Such standards include requirements for operation, maintenance, closure, leak and spill preparedness and prevention, emergency procedures, recordkeeping and reporting, groundwater monitoring, and financial requirements. Ga. Comp. R. & Regs. 391-3-11-.10(2) [40 C.F.R. Part 264].

17. Standards applicable for owners or operators of treatment, storage or disposal facilities (TSDFs) that use tank systems to manage hazardous waste are set forth in Ga. Comp. R. & Regs. 391-3-11-.10(2) [40 C.F.R. Part 264, Subpart J].

18. Standards applicable for owners or operators of TSDFs that use surface impoundments to manage hazardous waste are set forth in Ga. Comp. R. & Regs. 391-3-11-.10(2) [40 C.F.R. Part 264, Subpart K].

## FACTUAL ALLEGATIONS

19. This case concerns Defendant's facility at 209 SMC Road, situated on Colonel's Island in Glynn County, Georgia, ("the Facility") which was operating as a TSDF without a permit or interim status. The Facility occupies approximately 192 acres.

20. Since 1980, the Facility has produced bulk fragrance and flavor ingredients, including linalool, geranial, dihydromycrene, and dihydrocyrecenol from the alpha-pinene compound of crude sulfate turpentine.

6

21.     Although MSCI notified the State that it was a LQG on October 14, 2002, it submitted
        a biennial report on or about December 31, 2005, in which it characterized the Facility
        as a CESQG.

22.     On August 19, 2008, EPA conducted an initial Compliance Evaluation Inspection
        ("CEI") of the Facility, owned and operated at the time by MSCI.

23.     On September 8, 2008, EPA continued the CEI with personnel from EPA's Science
        and Ecosystem Support Division ("SESD") by conducting sampling at various
        locations.

24.     On March 4, 2009, EPA issued MSCI an Information Request pursuant to RCRA
        Section 3007.

25.     During EPA's 2008 CEI of the MSCI facility and to the present, the Facility has
        operated an onsite wastewater treatment center.

26.     The first component of the Facility's wastewater treatment center is the First Flush
        Basin, a 33-feet-long by 21-feet-wide by 10-feet- deep pool that receives process
        wastewaters and storm-influenced drainage from the Facility's various process areas,
        trench drains, pump pads, and truck loading and unloading areas.

27.     Since acquiring the Facility in December 2010, Defendant has never made a hazardous
        waste characterization of the contents of the First Flush Basin.

28.     Since acquiring the Facility in December 2010, Defendant has never had an integrity
        test performed on the First Flush Basin, nor has it certified that it was structurally
        sound.

29.     During EPA's CEI of the MSCI facility, EPA inspectors obtained two samples of
        liquid from the First Flush Basin and performed a toxicity characteristic leaching

7

procedure ("TCLP") analysis on them. The samples exceeded the regulatory limit
level at which a waste exhibits the toxicity characteristic for benzene, which is 0.5
milligram per liter ("mg/L"), (D006 hazardous waste) and for methyl ethyl ketone
("MEK"), which is 200 mg/L (D035 hazardous waste). Ga. Comp. R. & Regs. 391-3-
11-.07(1) [40 C.F.R. § 261.24]. The samples revealed the liquid contained levels of
benzene and MEK at 38 mg/L and 290 mg/L, respectively. The samples of liquid
from the First Flush Basin also exhibited a flashpoint of 107.06 degrees Fahrenheit
(i.e., 107.06 °F). With respect to liquids, a solid waste is a hazardous waste exhibiting
the characteristic of ignitability if it has a flash point of less than 140° F, and is
designated a D001 characteristic hazardous waste. Ga. Comp. R. & Regs. 391-3-11-
.07(1) [40 C.F.R. § 261.21(a)(1)].

30.     During EPA's CEI of the MSCI facility and to the present, wastewater at the Facility
        is pumped from the First Flush Basin to clarifier tanks where solids are removed, then
        pumped to the Equalization Tank ("EQ Tank") where pH adjustments are made, and
        then discharged to an Aeration Basin ("Aeration Basin") consisting of a surface
        impoundment equipped with aerators, which spray the wastewater from the surface
        impoundment onto the land surface. During the 2008 CEI, EPA inspectors obtained a
        sample of the wastewater being discharged to the surface impoundment from the EQ
        Tank. EPA's TCLP analysis of the sample revealed that the wastewater included MEK
        at a concentration of 610 mg/L. The regulatory limit for MEK is 200 mg/L. Ga. Comp.
        R. & Regs. 391-3-11-.07(1) [40 C.F.R. § 261.24].

31.     Data related to the testing of the wastewater for pH provided by the Defendant reveals
        that wastewater with a pH exceeding 12.5 on numerous occasions was discharged

8

from the EQ Tank to the Aeration Basin.  Waste with a pH greater than 12.5 is a hazardous waste due to the characteristic of corrosivity and is designated a D002 characteristic hazardous waste.

32.   At the time of EPA's CEI of the MSCI facility in 2008, MSCI had most recently notified the State that the Facility was a CESQG of hazardous waste, and therefore virtually exempt from RCRA regulations. At that time, the Facility did not have a permit for the treatment, storage, or disposal of hazardous waste.

33.   Based on the results of the 2008 CEI, Defendant's Facility is a TSD facility and is required to comply with TSD requirements. Defendant's Facility has not been complying with any TSD requirements.

**FIRST CLAIM FOR RELIEF**
*(Failure to make a hazardous waste determination in violation of Ga. Comp. R. & Regs. 391-3-11-.08(1) [40 C.F.R. § 262.11])*

34.   The allegations in Paragraphs 1 through 33 above are re-alleged and incorporated herein by reference.

35.   RCRA requires that a person who generates a solid waste, as defined in Ga. Comp. R. & Regs. 391-3-11-.07(1) [40 C.F.R. § 261.2], must determine if that waste is a hazardous waste. Ga. Comp. R. & Regs. 391-3-11-.08(1) [40 C.F.R. § 262.11].

36.   RCRA defines a solid waste as any discarded material that is not specifically excluded from regulation under RCRA. Ga. Comp. R. & Regs. 391-3-11-.07(1) [40 C.F.R. § 261.2]. Materials that are abandoned by being disposed of or accumulated, stored, or treated before or in lieu of being abandoned by being disposed of are solid waste. Ga. Comp. R. & Regs. 391-3-11-.07(1) [40 C.F.R. § 261.2(b)].

37.   Defendant's wastewaters are solid wastes.

9

38. At the time of EPA's 2008 CEI, MSCI had not made a hazardous waste determination on wastewater that was accumulated and stored in the First Flush Basin and treated in the EQ Tank, and which was then being discharged into the Aeration Basin at a rate of 34,000 to 60,000 gallons of wastewater per day. Defendant has not made a hazardous waste determination since it acquired the Facility in December 2010.

39. As a person who generates a solid waste, Defendant therefore violated Ga. Comp. R. & Regs. 391-3-11-.08(1) [40 C.F.R. § 262.11] by failing to make an adequate hazardous waste determination of the wastewater.

### SECOND CLAIM FOR RELIEF
*((Treatment, Storage and Disposal of Hazardous Waste in the First Flush Basin, EQ Tank and Aeration Basin without a Permit or Interim Status in violation of Section 3005 of RCRA, 42 U.S.C. § 6925; O.C.G.A. § 12-8-66(a) of the GHWMA; and the applicable regulatory requirements found at Ga. Comp. R. & Regs. 391-3-11-.10(2) [40 C.F.R. Part 264, Subparts A-G, J, K, and CC] and 391-3-11-.11 [40 C.F.R. Part 270]) )*

40. The allegations in Paragraphs 1 through 39 are realleged and incorporated herein by reference.

41. RCRA Section 3005(a), 42 U.S.C. § 6925(a); O.C.G.A. § 12-8-66(a) of the GHWMA, and Ga. Comp. R. & Regs. 391-3-11-.10(2) [40 C.F.R. Part 264, Subparts A-G, J, K, and CC] and Ga. Comp. R. & Regs. 391-3-11-.11 [40 C.F.R. Part 270], require, among other things, that the owner and operator of a hazardous waste management unit must have a permit or interim status for the treatment, storage and/or disposal of any hazardous waste during the active life of the unit.

42. The First Flush Basin, the EQ Tank and the Aeration Basin are all hazardous waste management units.

43. Since at least August 19, 2008, and continuing through July 31, 2014, MSCI and now Defendant have routinely stored hazardous wastewater from their production

processes, D001, D002, D006 and D035 hazardous waste, in the First Flush Basin, EQ Tank and the Aeration Basin.

44.    Since at least August 19, 2008, and continuing through July 31, 2014, MSCI and now Defendant have routinely treated hazardous wastewater from their production processes, D002 hazardous waste, in the EQ Tank.

45.    Since at least August 19, 2008, and continuing through July 31, 2014, MSCI and now Defendant have routinely disposed of hazardous wastewater from their production processes, D002 and D035 hazardous waste, in the Aeration Basin.

46.    Since at least August 19, 2008, MSCI and now Defendant have operated their Facility's First Flush Basin, EQ Tank and Aeration Basin, as hazardous waste management units, i.e., tanks, and/or surface impoundments, and is subject to the hazardous waste requirements of Ga. Comp. R. & Regs. 391-3-11-.10(2) [40 C.F.R. Part 264, Subparts A-G, J (Tanks), K (Surface Impoundments), CC (Air Emission Standards for Tanks, Surface Impoundments and Containers)].

47.    Defendant has neither a RCRA hazardous waste permit nor interim status for treatment, storage or disposal of hazardous waste in its First Flush Basin, EQ Tank or Aeration basin, and is, therefore, in violation of Section 3005 of RCRA, 42 U.S.C. § 6925; O.C.G.A. § 12-8-66(a) of the GHWMA; and the applicable regulatory requirements found at Ga. Comp. R. & Regs. 391-3-11-.10(2) [40 C.F.R. Part 264, Subparts A-G, J, K, and CC] and 391-3-11-.11 [40 C.F.R. Part 270].

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States of America and the State of Georgia respectfully request that this Court:

a.    Permanently enjoin Defendant from further violations of RCRA and its implementing regulations and enter such other injunctions as may be needed to protect human health and the environment, including but not limited to, closure and/or post-closure care pursuant to Section 3005 of RCRA, 42 U.S.C. § 6935 and O.C.G.A. § 12-8-66(a) of the GHWMA or facility-wide corrective action pursuant to Section 3004 of RCRA, 42 U.S.C. § 6924 and O.C.G.A. § 12-8-66(e) of the GHWMA, as necessary; and

b.    Grant such other further relief as this Court may deem just and proper.

Respectfully submitted,

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division

GABRIEL ALLEN
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-1032
Gabriel.Allen@usdoj.gov

12

/s/ Edgar D. Bueno
EDGAR D. BUENO
Assistant United States Attorney
Chief, Civil Division
Virginia Bar No. 41307
U.S. Attorney's Office
Post Office Box 8970
Savannah, Georgia 31412
(912) 652-4422
edgar.bueno@usdoj.gov


SAMUEL S. OLENS
Attorney General
State of Georgia

ISAAC BYRD
Deputy Attorney General
State of Georgia

JOHN E. HENNELLY
Georgia Bar Number 347075
Senior Assistant Attorney General
State of Georgia


ELIZABETH A. MONYAK
Georgia Bar Number 005745
Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: 404-463-0816
Facsimile: 404-651-6341
Email: emonyak@law.ga.gov

13