**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF GEORGIA, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. <u>2:14-cv-185</u> |
| RENESSENZ, LLC, f/k/a LYONDELLBASELL FLAVORS & FRAGRANCES, LLC, | ) ) ) |
| Defendant. | ) ) ) |

**<u>CONSENT DECREE</u>**

# TABLE OF CONTENTS

I.     JURISDICTION AND VENUE ................................................................. 3

II.    PARTIES BOUND AND NOTICE OF TRANSFER ....................................... 4

III.   DEFINITIONS................................................................................. 6

IV.   OBJECTIVES ................................................................................. 9

V.     GENERAL PROVISIONS ................................................................. 10

VI.   WORK TO BE PERFORMED........................................................... 10

VII.  AGENCY REVIEW AND APPROVAL.............................................. 13

VIII. SAMPLE AND DOCUMENT AVAILABILITY AND QUALITY.............. 17

IX.   FINANCIAL ASSURANCE .............................................................. 18

X.     ACCESS ....................................................................................... 19

XI.   STIPULATED PENALTIES ............................................................. 21

XII.  DISPUTE RESOLUTION ................................................................. 23

XIII. INDEMNIFICATION...................................................................... 27

XIV. FORCE MAJEURE ........................................................................ 28

XV.  RETENTION OF RIGHTS................................................................ 31

XVI. COVENANT OF PLAINTIFFS ......................................................... 32

XVII. COVENANT OF  RENESSENZ....................................................... 34

XVIII. MODIFICATION .......................................................................... 34

XIX. RETENTION OF JURISDICTION..................................................... 34

XX.  COSTS ........................................................................................ 35

XXI. NOTICE REQUIREMENTS ............................................................. 35

XXII. TERMINATION............................................................................ 36

WHEREAS, the United States of America, on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Georgia, on behalf of the Director of the Environmental Protection Division of the Georgia Department of Natural Resources, filed their Complaint asserting claims against Renessenz, LLC, f/k/a LyondellBasell Flavors & Fragrances, LLC pursuant to the Resource Conservation and Recovery Act, as amended ("RCRA"), 42 U.S.C. §§ 6901 et seq., 42 U.S.C. § 6928(a), including but not limited to 42 U.S.C. § 6924(d), relating to the disposal of hazardous wastes restricted from land disposal, and 42 U.S.C. § 6925 relating to permitting requirements; federal regulations promulgated at 40 C.F.R. Parts 260 through 279; and the authorized hazardous waste management program of the State of Georgia relating to the generation, transportation, treatment, storage, handling and disposal of hazardous wastes as set forth in Georgia's Hazardous Waste Management Act ("HWMA"), Sections 12-8-60 to 83 of the Official Code of Georgia Annotated ("O.C.G.A.") and implementing regulations promulgated pursuant thereto as set forth in Chapter 391-3-11 of the Official Compilation of Rules and Regulations of State of Georgia, Department of Natural Resources, Hazardous Waste Management Ga. Comp. R. & Regs. r. 391-3-11.01 through 391-3-11.18.

WHEREAS, Renessenz, LLC is a limited liability company organized and existing under the laws of Delaware and licensed to do business in the State of Georgia.

WHEREAS, Renessenz, LLC is the current owner and operator of a facility located on Colonel's Island, in Glynn County, Georgia (the "Facility").

WHEREAS, Millennium Specialty Chemicals, Inc. ("Millennium") was the owner and operator of the Facility in 2008 when EPA undertook a RCRA Compliance Evaluation Inspection ("CEI") of the facility.

WHEREAS, EPA's analysis of wastewater sampled during the CEI at the First Flush Basin on the facility revealed that a sample exhibited the hazardous characteristic of ignitability (D001) and, using EPA's Toxicity Characteristic Leaching Procedure ("TCLP"), that it exceeded toxicity characteristic levels for Benzene (D018) and Methyl Ethyl Ketone ("MEK") (D035).

WHEREAS, during the CEI, wastewater from the First Flush Basin and an associated Process Wet Well flowed via primary and secondary clarifiers to an Equalization Tank from which the wastewater was then discharged to an Aeration Basin and ultimately pumped to aerators located on a twenty (20) acre spray field at the Facility.

WHEREAS, effluent from the Equalization Tank sampled during the CEI and analyzed using TCLP exceeded toxicity characteristic levels for MEK.

WHEREAS, Millennium filed for protection from creditors under Chapter 11 of the U.S. Bankruptcy Code on January 6, 2009 in the U.S. Bankruptcy Court for the Southern District of New York.

WHEREAS, upon confirmation of Millennium's Third Amended Plan of Reorganization, ownership of the Facility was transferred to LyondellBasell Flavors & Fragrances, LLC on or about April 30, 2010.

WHEREAS, in *In re: Lyondell Chemical Company, et al.,* Ch. 11 Case No. 09-10023 (S.D.N.Y. April 23, 2010), civil penalties for various alleged RCRA violations at the Brunswick facility, were resolved through the bankruptcy settlement providing the United States with an allowed general unsecured claim of $499,980.

WHEREAS, LyondellBasell Flavors & Fragrances, LLC was acquired by Pinova Holdings, Inc. in December 2010 and renamed Renessenz, LLC (hereafter "Renessenz").

WHEREAS, Renessenz has begun designing and renovating and/or upgrading the Facility's Wastewater Treatment Plant, which will involve modifying Renessenz's existing Wastewater Treatment Plant, constructing a new above-ground Aeration Tank to replace the existing Aeration Basin, and performing regulatory closure of the First Flush Basin, the Process Wet Well, and the existing Aeration Basin, for the purpose of coming into compliance with the requirements of RCRA.

WHEREAS, the parties, without the necessity of trial or adjudication of any issues of fact or law, and without any admission of liability or of any factual or legal allegations (except as provided below), consent to entry of this Consent Decree resolving all issues in this action, including all claims for civil penalties and injunctive relief for the violations alleged in the Complaint; and

WHEREAS, the parties agree, and the Court finds that this Consent Decree has been negotiated by the parties in good faith, that the implementation of this Consent Decree will avoid prolonged and complicated litigation, and that the Consent Decree is fair, reasonable and in the public interest.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355 and 1367, and Section 3008(a) of RCRA, 42 U.S.C. § 6928(a). This Court has supplemental jurisdiction over the State law claims asserted by the State of Georgia pursuant to 28 U.S.C. § 1367. Venue is proper in this judicial district pursuant to 28 U.S.C.

§ 1391(b) and (c), 42 U.S.C. § 6928(a), 9613(b), and 7413(b). The Complaint states claims upon which the Court can grant relief.

2.      Solely for the purposes of this Consent Decree and the underlying Complaint, Renessenz waives all objections and defenses that it may have to the jurisdiction of the Court or to venue in this District. The parties shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## II.  PARTIES BOUND AND NOTICE OF TRANSFER

3.      This Consent Decree shall apply to and be binding upon the United States, the State, including the Environmental Protection Division of the Georgia Department of Natural Resources ("GAEPD"), and upon Renessenz and Renessenz's officers, agents, successors, assigns and all other persons acting on Renessenz's behalf or in active concert with Renessenz with regard to the Facility.

4.      Each party certifies that the undersigned representatives are fully authorized by that party to enter into the terms and conditions of this Consent Decree, to execute it on behalf of that party, and to legally bind the party.

5.      Unless otherwise agreed to by GAEPD and EPA, no change in ownership, corporate, or partnership status relating to the Facility, or conveyance of title, easement, or other interest in the Facility, including but not limited to any lease or transfer of assets or real or personal property, will alter Renessenz's obligation to comply with the requirements of this Consent Decree or Renessenz's liability for compliance by any successor or assign of Renessenz, in the event such successor or assign fails to perform obligations required by the Consent Decree.

      a)      In the event that any such conveyance or lease of Renessenz property will entail the usage by another person of Renessenz's First Flush Basin, the Process Wet Well, or the

existing Aeration Basin: (1) Renessenz shall, in the conveyance document, reserve the right to monitor compliance by that person and require that such person establish and maintain legally required waste characterization and environmental management programs with respect to the acquired property; (2) Renessenz shall remain liable for such person's compliance with this Consent Decree in the event that such person fails to comply; and (3) Renessenz shall remain liable to GAEPD and EPA for any stipulated penalties that may accrue due to any non-compliance by that person or failure of that person to pay stipulated penalties.

b)　　For such period of time as this Consent Decree is in force, any deed, title, or other instrument of conveyance utilized by Renessenz with respect to the Facility shall contain a notice that the Facility is the subject of this Consent Decree, setting forth the case caption and civil action number, and the Court having jurisdiction.

6.　　Renessenz shall notify GAEPD and EPA in the manner contemplated in Ga. Comp. R. & Regs. r 391-3-11-.11(8)(a) [40 C.F.R. § 270.40][1] for transfers of permits prior to a change in the operational or ownership status of any portion of the Facility, including but not limited to the conveyance of title, easement, leasehold or other interest. This notice shall also include a description of both the current and expected future activities (to the extent known by Renessenz) on that portion of the Facility to be conveyed, leased or otherwise alienated. Renessenz shall also provide a copy of this Consent Decree to the grantee prior to any such conveyance. Nothing in this paragraph shall be construed as giving EPA or GAEPD the power to approve, veto or halt any change referred to in this paragraph. Nothing in this paragraph shall

---

[1] The State of Georgia's authorized hazardous waste program operates in lieu of the federal RCRA program. Bracketed citations to the federal regulation that may follow citations to the State of Georgia's authorized program have been included solely for ease of reference.

be construed as affecting other provisions of law, if any, which may provide EPA or GAEPD the power to approve, veto or halt any change referred to in this paragraph.

7. At least ten (10) days prior to the commencement of any Work (other than work commenced or completed on the date of entry of this Consent Decree), Renessenz shall provide to each contractor hired to perform or monitor any of the Work required by this Consent Decree or its Attachments, a copy of all sections of this Consent Decree or Attachments relevant to the contractor's employment, and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree and its Attachments. Renessenz or its contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree.

8. Notwithstanding any retention of contractors, subcontractors or agents to perform or monitor any Work required under this Consent Decree, Renessenz shall be responsible for ensuring that all Work is performed in accordance with the requirements of this Consent Decree. In any action to enforce this Consent Decree or obtain stipulated penalties hereunder, Renessenz shall not assert as a defense the failure of its employees, servants, agents, contractors or subcontractors to take actions necessary to comply with this Consent Decree, unless Renessenz establishes, pursuant to the procedures set forth in Section XII (*Dispute Resolution*) below, that such failure resulted from a "force majeure" event as defined in Section XIV (*Force Majeure*) of this Consent Decree.

### III. DEFINITIONS

9. Unless otherwise expressly stated, the terms used in this Consent Decree that are defined in the HWMA or RCRA and in regulations promulgated thereunder shall have the meaning set forth in such definitions.

10.     Whenever the terms listed below are used in this Consent Decree or any Attachments hereto, the following definitions shall apply:

"*Area of Concern*" or "*AOC*" shall, for the purposes of this Consent Decree, include but not be limited to any geographic area that has experienced a probable release of a hazardous waste, hazardous constituent, or hazardous waste constituent and that, while not from a Solid Waste Management Unit, has nevertheless been determined to pose a current or potential threat to human health or the environment.

"*Consent Decree*" shall mean this Consent Decree and all attachments and exhibits hereto, if any, and all modifications.

"*Corrective Action*" shall mean any measure necessary, including assessment, to protect human health or the environment as contemplated under Section 3004(u) or Section 3004(v) of RCRA, 42 U.S.C. § 6924(u) and (v), and 40 C.F.R. §§ 264.100 – 101 and as required under the HWMA, § 12-8-60, et seq., and its analogous implementing regulations .

"*Day*" shall mean a calendar day unless expressly stated to be a working day. "*Working day*" shall mean a day other than a Saturday, Sunday or federal holiday. In computing any period of time prescribed or allowed under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business the next working day.

"*Defendant*" shall mean Renessenz, LLC, f/k/a LyondellBasell Flavors & Fragrances, LLC.

"*Effective Date of this Consent Decree*" shall be the date it is entered by the Court.

"*EPA*" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

*"Facility"* shall mean the facility owned or operated by Renessenz at 209 SCM Road, Brunswick, Glynn County, Georgia and all contiguous property under the control of the owner or operator.

*"GAEPD"* shall mean the Environmental Protection Division of the Georgia Department of Natural Resources and any successor environmental departments or agencies of the State of Georgia.

*"HWMA"* shall mean Georgia's Hazardous Waste Management Act, Sections 12-8-60 to 83 of the Official Code of Georgia Annotated ("O.C.G.A.").

*"Hazardous Waste Management Unit"* or *"HWMU"* shall include but not be limited to the First Flush Basin, the Process Wet Well, the Aeration Basin, and associated ancillary equipment.

*"Parties"* shall mean the United States of America, the State of Georgia, and Renessenz.

*"Plaintiffs"* shall mean the United States of America, its agencies and departments, including the Environmental Protection Agency, and the State of Georgia, including the Environmental Protection Division of the Georgia Department of Natural Resources.

*"RCRA"* shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 et seq. (also known as the Resource Conservation and Recovery Act).

*"Solid Waste Management Unit"* or *"SWMU"* for the purposes of this Consent Decree includes, but is not limited to, any landfill, surface impoundment, waste pile, land treatment unit, incinerator, injection well, tank (including storage, treatment, and accumulation tanks), container storage unit, wastewater treatment unit, including all conveyances and appurtenances used in waste management or storm water handling, elementary neutralization unit, transfer station, or recycling unit from which hazardous waste or hazardous constituents might migrate, irrespective of whether the units were intended for the management of solid and/or hazardous waste.

*"State"* shall mean the State of Georgia.

*"United States"* shall mean the United States of America, on behalf of its agencies and departments, including the United States Environmental Protection Agency.

*"Work"* shall mean all activities Renessenz is required to perform under Section VI (*Work To Be Performed*) of this Consent Decree to complete regulatory closure of the First Flush Basin, the Process Wet Well, and the existing Aeration Basin.

## IV.  OBJECTIVES

11.    The purposes of the United States, the State and Renessenz in entering into this Consent Decree are:

a)      to resolve all pending RCRA claims according to the terms and subject to the reservations set forth herein, without admission of fact or liability or the necessity of further litigation;

b)      to assure that Renessenz operates the Facility in compliance  with applicable requirements of RCRA, corresponding state laws, and applicable implementing regulations under the foregoing statutes;

c)      to protect human health and the environment from risks arising from any releases or threatened releases of hazardous waste or hazardous constituents at or from the existing Wastewater Treatment Plant (*"WWTP"*) located at the Facility by Renessenz's  installation of a new WWTP and its regulatory closure of the existing WWTP in accordance with applicable law  and in conformance with  corrective action standards established  in accordance with the HWMA,  O.C.G.A. §12-8-60 et seq., the Georgia Hazardous Site Response Act O.C.G.A. § 12-8-90 et seq., and Chapter 391-3-11 of the Georgia Rules for Hazardous Waste Management, and the Georgia Environmental

Protection Division Guidance for Selecting Media Remediation Levels at RCRA Solid Waste Management Units.

## V. GENERAL PROVISIONS

12. <u>Compliance With Applicable Law</u>: All activities undertaken by Renessenz pursuant to this Consent Decree shall be performed in accordance with all applicable federal, state and local laws and regulations, or permits, including, without limitation, federal or state laws and regulations governing the generation, management, treatment, storage, transport, and disposal of hazardous waste, all Occupational Safety and Health Act regulations, and the terms and conditions of any extant permit applicable to the Facility.

13. <u>Permits</u>: Where any portion of the Work requires a federal, state or local permit or approval, Renessenz shall submit timely and complete applications, shall take all other actions required by law to obtain such permits or approvals, and shall use best efforts to take all other actions necessary to obtain all such permits or approvals.

14. Renessenz may seek relief under the provisions of Section XIV (*Force Majeure*) of this Consent Decree for any delay in the performance of the Work resulting from the lack of a permit required for the Work, provided that Renessenz has complied with the preceding paragraph and used due diligence to obtain such permit.

15. This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal, state or local statute or regulation.

## VI. WORK TO BE PERFORMED

16. Upon entry of the Consent Decree, Renessenz shall operate the Facility in compliance with all applicable provisions of the hazardous waste management program for the

State of Georgia, as well as all applicable federal provisions of RCRA and regulations promulgated thereunder, and the provisions of this Consent Decree, except that Renessenz may operate the First Flush Basin, Process Wet Well, and Aeration Basin without a permit or interim status until it completes the Work. Renessenz shall complete the Work as expeditiously as reasonably possible.

17. Renessenz shall expedite completion of the design, construction, and installation of a new WWTP at the Facility in such a manner as to timely undertake the regulatory closure of the existing WWTP in compliance with the provisions of this Consent Decree. Upon completion of the Work, Renessenz shall operate the Facility in full compliance with all applicable provisions of the hazardous waste management program for the State of Georgia, as well as all applicable federal provisions of RCRA and regulations promulgated thereunder.

18. Renessenz shall perform regulatory closure of the First Flush Basin, the Process Wet Well, and the Aeration Basin in accordance with GHWMR 391-3-11.10 [Subpart G of 40 C.F.R. Part 264 and 40 C.F.R. § 264.197 and/or 40 C.F.R. § 264.228] as part of its modifications to the Facility's existing WWTP. The First Flush Basin, Process Wet Well, and Aeration Basin, will be removed from service and shall be closed as described under the terms of an approved Closure Plan..

19. Closure Plan(s): Renessenz shall prepare a draft Closure Plan(s) for the First Flush Basin, the Process Wet Well, and the Aeration Basin consistent with the standards and requirements for closure and post-closure care set out at Ga. Comp. R. & Regs. r. 391-3-11.10 [40 C.F.R. § 264.197 and/or 40 C.F.R. § 264.228], as well as all pertinent EPA and GAEPD guidance. The draft Closure Plan(s) shall include a schedule setting out closure activities, and shall reflect physical on-site closure activities beginning no later than December 31, 2014. The

draft Closure Plan(s) shall be submitted for review and approval as set forth in Section VII (*Agency Review and Approval*) within forty-five (45) days of the Effective Date of this Consent Decree.  Upon approval, the Closure Plan(s) shall be incorporated into and become enforceable under this Consent Decree.

20.　Closure Report(s):  Within 60 days of completion of the activities contemplated in the approved Closure Plan, Renessenz shall submit a Closure Report(s) for review and approval in accordance with Section VII (*Agency Review and Approval).*  In addition to documenting compliance with the approved Closure Plan(s), the Closure Report(s) shall, at a minimum, contain the following:

　　a)　A summary of all sampling conducted by Renessenz as required by the Closure Plan, including maps drawn to scale and/or aerial GPS maps that identify all sampling locations for soil, sediment, groundwater, and surface water, as well as the analytical results for each sample taken at each sampling location;

　　b)　An evaluation of the analytical results for each HWMU, including:

　　(i)　A summary of concentrations found in relation to EPA Regional Screening Levels (available at http://www.epa.gov/reg3hwmd/risk/human/rb-concentration_table/Generic_Tables/index.htm); and EPA ecological screening values (available at http://epa.gov/region4/waste/ots/ecolbul.htm#ecoscreen)

　　(ii)　Identification of pollution migration pathways (soil, sediment, surface water, groundwater, air, subsurface gas) if EPA screening levels are exceeded; and

　　(iii)　Identification of potential/actual receptors (human and ecological);

c)      A certified report from a professional engineer (P.E.) licensed in the State of Georgia stating the current structural integrity of the subject HWMU (i.e., the Aeration Basin, First Flush Basin, and/or Process Wet Well); and

d)      A recommendation for: No further action ("NFA"), interim measures ("IM"), post-closure care, and/or the collection of additional confirmatory sampling data to make a NFA/IM/post-closure determination based on the evaluation of the analytical results.

21.      Post-Closure Obligations: In the event that EPA and/or GAEPD make a determination based on the Closure Report(s) that clean-closure has not been fully demonstrated and that post-closure care is necessary for any HWMU, pursuant to Ga. Comp. R. & Regs. r. 391-3-11-.11(1)(a), Renessenz shall submit to GAEPD a permit application for post-closure care and financial responsibility for any such unit in accordance with the closure and post-closure care requirements. In addition, if post-closure care is necessary for any HWMU, Renessenz shall include requirements for facility-wide corrective action in its permit application.

22.      All Work performed by Renessenz shall be undertaken in conformance with all pertinent EPA and GAEPD guidance documents, rules, and regulations.

## VII. AGENCY REVIEW AND APPROVAL

23.      Renessenz shall submit all draft and final work plans, reports, and other documents for the Work to EPA and to GAEPD for review and, if required, approval, in accordance with the terms of this Consent Decree. Except for submittals associated with Renessenz's post-closure obligations, if approval is required, EPA, in consultation with GAEPD, will notify Renessenz in writing of the agency(ies') approval, disapproval or modification of such plans, reports or other documents, or any part thereof. Similarly, GAEPD, in consultation with EPA, will provide such notifications to Renessenz with respect to submittals associated with

post-closure obligations. The Parties acknowledge and agree that EPA and GAEPD retain and reserve the right to alter or amend their review and approval roles subject only to providing Renessenz with adequate written notification of any such changes. In the event of a submittal's approval, Renessenz shall commence and complete implementation of the submittal within the time schedule set forth in the submittal. In the event of disapproval, the written notice will set out the reason(s) for the disapproval and specify or reference the data, if any, upon which the agency(ies) rely. Similarly, the written notice will set out the reason(s) and reference the data, if any for modifications which the agencies conclude must be made prior to the agencies' approval of any such work plans, reports or other documents.

24. Within sixty (60) days of receipt of agency disapproval or modification of any work plan, report, or other document required to be submitted under this Consent Decree, or within such other time as provided in the notification or this Consent Decree, or as agreed to in writing by the Parties, Renessenz shall amend and submit a revised document to EPA and GAEPD. In the event Renessenz does not timely amend, revise or submit a document addressing and correcting the matters described by the agencies: (1) Renessenz shall be subject to stipulated penalties under Section XI (*Stipulated Penalties*) of this Consent Decree and (2) EPA may unilaterally modify work plans, reports or other documents related to pre-closure activities, and GAEPD may unilaterally modify work plans, reports or other documents related to closure and post-closure activities. Subject only to the procedures set out in Section XII (*Dispute Resolution*) of this Consent Decree, Renessenz shall commence implementation of any revised or modified work plan, report or other document within thirty (30) days of receipt of GAEPD or EPA's approval or unilateral modification of a work plan, report or other document, unless the specific provision governing implementation of the document provides for a longer time period,

14

in which case the longer time period shall govern. If it fails to implement the modified work plan, Renessenz shall be subject to stipulated penalties pursuant to Section XI (*Stipulated Penalties*) of this Consent Decree. A deficient work plan, report or other document that is re-submitted with the same or substantially similar deficiency shall be deemed to have never been submitted for purposes of calculating stipulated penalties.

25. Documents, including reports, approvals, disapprovals and other correspondence to be submitted pursuant to this Consent Decree, shall be sent to EPA's and GAEPD's Project Coordinators at their respective addresses, as set out below, or such other person that Renessenz and GAEPD or EPA hereafter agree upon in writing:

a) One copy of all documents to be submitted to EPA shall be sent to:

> Larry Lamberth, Chief
> South Section, RCRA & OPA Enforcement and Compliance Branch
> U.S. Environmental Protection Agency - Region IV
> 61 Forsyth Street, SW
> Atlanta, Georgia 30303
> Lamberth.Larry@epa.gov
> Phone: (404) 562-8590
> Fax: (404) 562-8566

b) One printed copy and one copy in optical media format (e.g., CD, DVD, USB "flash" storage) of all documents to be submitted to GAEPD, (except permit applications, in which case two printed copies and one optical media format) shall be sent to:

> Mike Elster, Unit Coordinator
> Treatment and Storage Unit
> Land Protection Branch
> GA Environmental Protection Division
> 2 Martin Luther King Jr. Drive
> Suite 1052 East
> Atlanta, GA 30334
> Office: (404) 656-2833
> Fax: (404) 651-9425
> Email: Michael.Elster@dnr.state.ga.us

c) Documents to be submitted to Renessenz should be sent to:

Nancy Mick
Director of Strategic Environmental Initiatives
Pinova Holdings
c/o Pinova, Inc.
2801 Cook Street
Brunswick, GA 31520
Office: (912) 265-3550, Ext. 3222
Fax: (912) 261-0301
Email: nwmick@pinovasolutions.com

26. All documents submitted by Renessenz to GAEPD and EPA for review and approval or modification pursuant to this Consent Decree shall be signed by a responsible agent of the Facility as defined in 40 C.F.R. § 270.11(a)(1), or his or her duly authorized representative, and shall include the following certification statement:

"I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I further certify, to the best of my knowledge and belief, that this document meets the objectives and requirements of the Consent Decree entered among GAEPD, EPA and Renessenz in connection with Civil Action No. 2:14-cv-185 in the United States District Court for the Southern District of Georgia, Brunswick Division. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

## VIII. SAMPLE AND DOCUMENT AVAILABILITY AND QUALITY

27.     Throughout all sample collection and analysis activities, Renessenz shall comply with all GAEPD and EPA guidance or other documents pertaining to appropriate methods and procedures concerning, *inter alia*, quality assurance/quality control ("QA/QC"), field procedures, record keeping, reporting, chain-of-custody, and laboratory methods.

28.     After completion of appropriate QA/QC procedures, Renessenz shall make available to EPA and GAEPD the results of all sampling, laboratory, testing, and/or other data generated by or on behalf of Renessenz during implementation of this Consent Decree.

29.     Unless otherwise provided herein or set out in a document approved by GAEPD or EPA under this Consent Decree, Renessenz shall notify EPA and GAEPD at least seven (7) working days prior to the performance of the Work at the Facility (including but not limited to borings, well drilling, equipment installation, and sampling) arising from its implementation of this Consent Decree.  Written notification shall be sent by facsimile transmission or e-mail to EPA and GAEPD's Project Coordinators as described hereinabove.  Upon request of EPA or GAEPD, Renessenz shall provide split samples to EPA and GAEPD, or allow EPA and GAEPD or their authorized representatives to take samples or split or duplicate samples of any samples collected by Renessenz or on its behalf, pursuant to the implementation of this Consent Decree.

30.     Renessenz agrees to preserve and to make available to EPA and to GAEPD during the pendency of this Consent Decree and for a minimum of three (3) years after its termination, all records and documents in the possession, custody or control of Renessenz or its affiliates, employees, agents, consultants or contractors, which relate to the performance of its obligations under this Consent Decree.  At least sixty (60) days prior to destruction or disposal of any such records, Renessenz shall notify EPA and GAEPD and make such records available to EPA or GAEPD for inspection or retention.  With respect to the performance of obligations

pertaining only to Post Closure care or Corrective Action, however, such disclosures and notifications need only be made to GAEPD.

## IX. FINANCIAL ASSURANCE

31.     Renessenz shall submit an initial cost estimate for all closure-related activities to EPA and GAEPD with submittal of the Closure Plan. At that time, Renessenz shall establish and maintain financial assurance in an amount sufficient to cover the costs of assessment and any closure activities at the Facility as contemplated herein, in the form of a trust fund; surety bond guaranteeing payment into a trust fund; surety bond guaranteeing performance; letter of credit; insurance; or financial test and corporate guarantee, to be worded as set forth in Ga. Comp. R. & Regs. r. 391-3-11-.05. Upon a determination that a Post-Closure Permit or Corrective Action is needed, Renessenz shall revise and/or update its cost estimate, and shall update and maintain financial assurance in an amount sufficient to cover the costs of any such post-closure or corrective action activities at the Facility, in the form of a trust fund; surety bond guaranteeing payment into a trust fund; surety bond guaranteeing performance; letter of credit; insurance; or financial test and corporate guarantee, to be worded as set forth in Ga. Comp. R. & Regs. r. 391-3-11-.05. Updated cost estimates shall be submitted with any proposed modifications to any closure, post-closure or corrective action activities that may result in an increase to any cost estimates, but no less often than annually. If EPA or GAEPD needs clarification or disagrees with a cost estimate, EPA and/or GAEPD will notify Renessenz in writing of the determination. Renessenz shall then have 45 days from receipt of such notification to resubmit additional information or corrected documentation. All submittals provided in accordance with this paragraph are subject to  Section VII (*Agency Review and Approval*) of this Consent Decree; such submittals provided to GAEPD shall be in duplicate.

## X.  ACCESS

32.    Renessenz agrees to provide EPA and GAEPD and their representatives, including contractors, access at all reasonable times to enter and move about all property at the Facility, for any purpose relating to the implementation, monitoring or enforcement of this Consent Decree, including but not limited to the discussions with Renessenz's Project Coordinator, his/her designated representative(s) or personnel involved in Work at the Facility; inspecting records, operating logs and contracts related to the implementation, monitoring or enforcement of this Consent Decree; reviewing progress of Renessenz in carrying out terms of this Consent Decree; conducting such sampling and tests as EPA or GAEPD or their representatives deem appropriate for implementation, monitoring or enforcement of this Consent Decree; using a camera, sound recording, or other documentary type equipment; and verifying the reports and data that are submitted to GAEPD or EPA.  Renessenz shall permit such person(s) to inspect and copy all records, files, photographs, computer records and other writings, including all sampling and monitoring data, related to the implementation, monitoring or enforcement of this Consent Decree.  Such persons will comply with the terms of all health and safety plans approved in accordance with this Consent Decree.  Representative(s) of Renessenz may accompany EPA or GAEPD representatives throughout the Facility but shall not in any way delay or impede their investigative or other activities.  During sampling activities, Renessenz may, upon request, receive splits of any samples taken by EPA or GAEPD or their contractors, and/or may receive a copy of the results of analyses or tests made upon such samples.  Renessenz shall remain entitled to all protections of all confidential business information available to it under applicable statute or regulation, and in the event Renessenz adequately identifies and properly determines that documents, materials, or other records provided to EPA and/or GAEPD under this Consent Decree contain such information, EPA

and/or GAEPD will handle such information in a manner consistent with such statute(s) and regulation(s). Nothing in this Paragraph shall be deemed to be a waiver of attorney-client or other privileges or doctrines available to Renessenz that would be otherwise applicable.

33.     To the extent that Work required by this Consent Decree must be done on property that Renessenz does not currently own or control, or to which it does not have lawful access, Renessenz shall use best efforts, including the payment of reasonable sums of money in consideration of access, to obtain site access agreements for itself and its contractors, as well as for EPA or GAEPD and their authorized representatives and contractors, from the owner(s) or lessee(s) of such property. Renessenz shall seek to obtain such access agreements as expeditiously as practicable to prevent any delays in Work required under this Consent Decree. If Renessenz cannot, despite its best efforts, secure access to property where Work is to be performed under this Consent Decree, Renessenz shall, within thirty (30) days after its initial request for access to such property, again request access in a certified letter sent return receipt requested to the property owner. If an agreement for access to such property is not obtained within sixty (60) days after Renessenz's initial request for access, Renessenz shall notify EPA and GAEPD regarding both the efforts undertaken to secure an access agreement and the reasons for Renessenz's inability to obtain such an agreement. In the event that access is obtained by the United States and/or the State, Renessenz shall expeditiously perform the EPA- or GAEPD-approved Work on such property, and shall reimburse the United States and/or the State for all associated attorneys' fees and other reasonable costs.

34.     Nothing in this Section shall in any way limit or otherwise affect GAEPD or EPA's right of access and entry pursuant to any applicable law authorizing access and entry, including but not limited to Section 3007 of RCRA, 42 U.S.C. § 6927, Section 104(e) of

CERCLA, 42 U.S.C. § 9604(e), O.C.G.A. § 12-8-70(a) of the Georgia Hazardous Waste Management Act, O.C.G.A. § 12-8-96(c) of the Georgia Hazardous Site Response Act, or any other applicable federal or state law.

## XI.  STIPULATED PENALTIES

35.     Unless excused under Section XIV (*Force Majeure*) of this Consent Decree and as set forth below, Renessenz shall be liable to the United States and to the State for stipulated penalties for any failure to comply with the requirements of this Consent Decree.  For purposes of this Section XI (*Stipulated Penalties*) "compliance" by Renessenz shall constitute no less than the full and successful completion of each activity contemplated under the terms of this Consent Decree, or of any work plan or other plan or document approved under this Consent Decree performed in accordance with all applicable requirements of law and this Consent Decree, and accomplished within the time frames and schedules established by and approved under this Consent Decree.

36.     For a failure to comply with any of the requirement described below in this Paragraph, stipulated penalties shall accrue in the amounts set forth, per violation, per day:

|  | Period of Noncompliance | | |
| --- | --- | --- | --- |
|  | 1-30 Days | 31-60 Days | 61 days & Over |
| Timely submittal of a workplan ..……………. | $500 | $750 | $1,000 |
| Meeting (a) deadline(s) *for commencing* work under any workplan ……………………… | $500 | $1,000 | $1,500 |
| Meeting (a) deadline(s) *for completion* of work under any workplan…………………….. | $500 | $1,000 | $1,500 |
| Timely payment of a stipulated penalty ……… | $500 | $1,000 | $2,000 |
| For a material violation of any other requirement of this Consent Decree………….. | $500 | $750 | $1,000 |

37. All penalties shall begin to accrue on the earlier of the day after the complete performance is due or the day a violation occurs and shall continue to accrue through the day before compliance is achieved, except as provided below. Nothing herein shall prevent the simultaneous accrual of penalties for separate violations of this Consent Decree. Renessenz shall pay all penalties accruing under this Section to the United States and the State within thirty (30) days of the date Renessenz receives a written demand for payment from EPA or GAEPD unless Renessenz elects to timely invoke the procedures set out under Section XII (*Dispute Resolution*).

38. Either Plaintiff may, in its unreviewable discretion, choose to reduce or waive stipulated penalties otherwise due to that Plaintiff under the Consent Decree, or to establish an extended payment schedule for any such payments. The Parties hereby agree that any determination by one Plaintiff not to seek stipulated penalties or to reduce or waive the amount demanded shall not be construed by the other Plaintiff to bar or otherwise restrict said other Plaintiff in any way from seeking the full amount of the stipulated penalties demanded.

39. Where both Plaintiffs demand stipulated penalties for the same violation of this Consent Decree, Renessenz shall pay fifty (50) percent to the United States and fifty (50) percent to the State. Where only one Plaintiff demands stipulated penalties for a violation, and the other Plaintiff does not join in the demand within twenty (20) days of receiving written notice of the demand, Renessenz shall pay the full stipulated penalties due for the violation to the Plaintiff making the demand. Where both Plaintiffs demand stipulated penalties for a violation, but one subsequently elects to waive or reduce the amount of stipulated penalties for that violation, Renessenz shall pay the full amount of stipulated penalties due for the violation to the Plaintiff making the full demand less any amount paid to the other Plaintiff. All payments to the United

States under this Section shall be paid by certified or cashier's check(s), made payable to the "Treasurer of the United States," shall be mailed to the United States Attorney's Office for the Southern District of Georgia, attention Civil Chief, shall indicate that the payment is for stipulated penalties, shall state the basis for the payment of stipulated penalties, and shall reference DOJ file No. 90-5-2-1-2132/5, and the name and address of Renessenz. Copies of the transmittal letter and check(s) shall be sent to EPA and GAEPD pursuant to Section VII (*Agency Review and Approval)* of this Consent Decree. All payments to the State under this Section shall be paid by certified or cashier's check, shall be made payable to the State of Georgia, and shall be mailed to the Georgia Environmental Protection Division; Land Protection Branch; 2 Martin Luther King Jr. Drive, Suite 1052 East, Atlanta, GA 30334-9000.

40.     The penalties set forth in this Section do not preclude the United States, EPA, the State of Georgia or GAEPD from pursuing any other remedy or sanction, including contempt sanctions or statutory civil penalties, which may be available by reason of Renessenz's failure to comply with any of the requirements of this Consent Decree, and Renessenz retains all rights to contest such actions. The payment of such penalties shall not alter in any way Renessenz's obligation to complete performance of all Work required under this Consent Decree.


## XII.  DISPUTE RESOLUTION

41.     Unless otherwise expressly provided for in this Consent Decree, Renessenz shall have the right to dispute any decision of EPA or GAEPD under this Consent Decree, and the provisions of this Section XII (*Dispute Resolution*) shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the provisions in this Section shall not apply to actions by the United States or the State to enforce obligations of Renessenz that have not been disputed in accordance with this Section.

42.     Informal Dispute Resolution. Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed thirty (30) days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered *"to have arisen"* when one party receives a written Notice of Dispute having been sent by the other party.

43.     Invocation of Formal Dispute Resolution.

a.      In the event that the parties cannot resolve a dispute by informal negotiations as set out above, then the position advanced by EPA or GAEPD shall be considered binding unless Renessenz, within twenty (20) days after the later of the conclusion of the informal negotiation period or the termination of mediation if it has been agreed upon by the parties, invokes the formal dispute resolution procedures of this Section XII (*Dispute Resolution*) by serving on EPA and GAEPD a written "*Statement of Position*" on the matter in dispute, including, but not limited to, all factual data, analysis or opinion supporting that position, all supporting documentation relied upon by Renessenz, and any actions which Renessenz considers necessary for resolution of the dispute.

b.      EPA or GAEPD may serve on Renessenz a Statement of Position, including but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by EPA or GAEPD.

c.      An administrative record of the dispute shall be maintained by EPA or GAEPD and shall contain all statements of position, including supporting documentation, submitted pursuant to this Paragraph. Where appropriate, EPA or GAEPD may allow submission of supplemental statements of position by the parties to the dispute.

d.　EPA or GAEPD will issue a final administrative decision resolving the dispute based on the on the administrative record described in Paragraph 43(c) and shall notify Renessenz in writing setting forth the basis of its decision. This decision shall be binding upon Renessenz, subject only to the right to seek judicial review pursuant to Paragraph 44.

44.　Judicial Review.　Renessenz may seek judicial review of any administrative decision pursuant to Paragraph 43 (d) by filing with this Court and serving on all parties a motion requesting judicial review of the dispute. The motion must be filed within fifteen (15) days of receipt of the written determination referenced in Paragraph 43(d). The motion shall set forth a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved in order to ensure orderly administration of this Consent Decree. GAEPD and EPA may file a response to this Motion.

45.　Except as otherwise provided in this Consent Decree, in any dispute brought under this Section pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules, or any other items requiring approval by EPA or GAEPD under this Consent Decree; the adequacy of the performance of Work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review of the administrative record under

applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States or State is arbitrary and capricious or otherwise not in accordance with law.

46.　The invocation of informal or formal dispute resolution procedures under this Section shall not of itself extend or postpone any obligation of Renessenz under this Consent

Decree, but the payment of stipulated penalties with respect to the disputed matter shall be stayed pending resolution of the dispute. Renessenz may request that GAEPD and/or EPA suspend performance otherwise required pending dispute resolution if performance would (a) render moot the matter submitted to dispute resolution or (b) pose a risk to human health or the environment. Notwithstanding the stay of payment, stipulated penalties shall continue to accrue as provided in this Paragraph during both informal and formal proceedings to resolve disputes under this Consent Decree. During the formal administrative dispute resolution process described above, stipulated penalties shall continue to accrue for sixty (60) days after EPA and GAEPD receive Renessenz's Statement of Position. After EPA and/or GAEPD issue a written determination as set out above, stipulated penalties shall again accrue until resolution of any judicial appeal. Stipulated penalties shall be paid within sixty (60) days after written demand by EPA or GAEPD following resolution of the dispute by EPA or GAEPD or the Court if, but only if Renessenz's position is not sustained. Upon resolution of any dispute, whether informally or through judicial appeal in which any part of Renessenz's position is not sustained, Renessenz shall, within sixty (60) days or such other time as EPA or GAEPD may approve or the Court may direct, incorporate the resolution into an amended work plan, procedure, or other document and proceed with the Work according to the amended plan or procedure, provided that Renessenz shall be given no less time to perform a specific task under a work plan amended following completion of the dispute resolution process than it would have had under the original work plan unless EPA or GAEPD determines that an imminent and substantial endangerment to human health or the environment exists.

## XIII.  INDEMNIFICATION

47.     The United States and the State, including GAEPD, do not assume any liability by entering into this agreement.  Renessenz agrees to indemnify, save, and hold harmless the United States and the State, their agencies, departments, officials, agents, employees, contractors, subcontractors and representatives from any and all claims, causes of action, losses, actions, liabilities, judgments, verdicts, awards, or demands of whatsoever kind or nature (including the payment of all litigation expenses and attorneys' fees),  arising from or on account of acts or omissions of Renessenz, its officers, directors, employees, contractors, subcontractors, receivers, trustees, agents, or assignees, and any other person acting on its behalf or under its control in carrying out the activities pursuant to this Consent Decree.  Further, Renessenz agrees to pay the United States and  the State all costs they incur including, but not limited to, reasonable attorneys' fees of litigation and  settlement arising from, or on account of, claims made against the United States or the State, including GAEPD, based on acts or omissions of Renessenz, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree.  Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of Renessenz in carrying out activities pursuant to this Consent Decree.  Neither Renessenz nor any contractor shall be considered an agent of the United States or the State.

48.     Renessenz waives all claims against the United States and the State for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State arising from or on account of any contract, agreement, or arrangement between Renessenz and any person for performance of Work on or relating to the Facility, including, but not limited to, claims on account of construction delays.  In addition, Renessenz shall indemnify and hold harmless the United States and the State with respect to any and all claims for damages or

27

reimbursement arising from or on account of any contract, agreement, or arrangement between Renessenz and any person for performance of Work on or relating to the Facility, including but not limited to, claims on account of construction delays.

## XIV. FORCE MAJEURE

49.     Renessenz shall perform the requirements of this Consent Decree in the manner and within the time limits set forth herein, unless the performance is prevented or delayed by events which constitute a *force majeure*. No stipulated penalties shall accrue for any time period during which performance is excused or delayed as a result of a *force majeure* event. Renessenz's obligation to comply with one or more of the provisions of this Consent Decree shall be deferred to the extent and for the duration that the delay is caused by a *force majeure* event. A *force majeure* is defined as any event caused by circumstances entirely beyond the control of Renessenz or any entity subject to control by Renessenz, including a contractor or consultant, which delays or prevents performance of any work or other action undertaken to fulfill any obligation of Renessenz under this Consent Decree, despite the best efforts of Renessenz, its contractors, or consultants to perform such work or other action in a timely manner. The requirement that Renessenz exercise "best efforts" includes using best efforts under the circumstances to anticipate any potential *force majeure* event and best efforts under the circumstances to address the effects of any potential *force majeure* event (1) as it is occurring and (2) following the *force majeure* event, such that the delay is minimized to the extent reasonably possible under the circumstances. "*Force Majeure*" shall not apply to any delay due to increased costs or Renessenz's financial inability to carry out the provisions of this Consent Decree, to normal precipitation events, or to Renessenz's failure to make timely and bona fide applications and to exercise diligent efforts to obtain permits. For purposes of this decree,

"normal precipitation events" are those which are equal to or less than a twenty-four hour (24 hour), twenty-five year (25 year) storm event.

50.     When circumstances are occurring or have occurred that can reasonably be anticipated to cause a delay in achieving any requirement set forth in this Consent Decree, or in any plan developed hereunder within the time allowed, Renessenz shall promptly notify GAEPD and EPA in writing via email, and in no event later than 72 hours after Renessenz knew or reasonably should have known of the occurrence of such circumstances. Such notice shall include an estimate of the anticipated length of delay, including necessary demobilization and remobilization, its cause, measures taken or to be taken to minimize the delay, an estimated time table for implementation of such measures, a statement as to whether Renessenz is claiming a *force majeure* and the bases for such a claim. Renessenz shall adopt all reasonable measures to avoid or minimize any such delay. Failure to comply with the notice provision of this section shall constitute a waiver of Renessenz's right to assert *force majeure*. Notification of any delay, in and of itself, shall not extend the time allowed for meeting any requirement or excuse the delay or payment of stipulated penalties.

51.     If EPA and GAEPD agree that the delay was attributable to a *force majeure* event, they will extend the time for performance of that requirement by a period not greater than the delay resulting from such circumstances, unless the parties agree that a different time period is acceptable. Such an extension does not alter the schedule for performance or completion of other tasks required under this Consent Decree, except that EPA and GAEPD will extend the time for performance of other tasks under this Decree that EPA and GAEPD agree will also necessarily be delayed as a result of the force majeure event.

52.    In the event that EPA, GAEPD and Renessenz cannot agree as to whether a delay was caused by a *force majeure* event, or as to the length of the appropriate extension of time, the dispute shall be resolved in accordance with the dispute resolution procedures set forth in Section XII (*Dispute Resolution*).  In any such dispute resolution proceeding, Renessenz shall have the burden of demonstrating by clear and convincing evidence that the event was a *force majeure* event, that the duration of the delay caused by such event is or was reasonable under the circumstances, and that, as a result of the delay, a particular extension period is appropriate.  If Renessenz carries this burden, the delay at issue shall be deemed not to be a violation by Renessenz of the affected obligation of this Consent Decree.  For purposes of this Consent Decree, a *force majeure* event may include a situation in which the EPA and GAEPD fail to agree between themselves regarding any approval or decision requiring by the terms of this Consent Decree unanimity between them, unless such failure to agree is caused by Renessenz's failure to submit information, data or documentation contemplated by this Consent Decree or by some other action or omission caused by Renssenz.  As to matters required to be approved or decided by GAEPD and EPA under this Consent Decree, at no time shall Renessenz be required to choose which Plaintiff's decision to follow if following one Plaintiff's decision necessarily means rejecting or otherwise being inconsistent with the other's view.  Renessenz shall give notice to GAEPD and EPA if it is faced with such a decision, and the agencies shall diligently work to resolve the issue upon receipt of such notice.

## XV.  RETENTION OF RIGHTS

53.    GAEPD and EPA expressly reserve all rights and defenses that they may have, including, subject to the provisions of this Consent Decree, the right to disapprove of Work

performed by Renessenz pursuant to this Consent Decree and to request that Renessenz perform tasks in addition to those stated in this Decree, the attachments hereto, or work plan(s).

54.     EPA and GAEPD hereby reserve all statutory and regulatory powers, authority, rights, and remedies, both legal and equitable, to enforce Renessenz's obligation to comply with any of the requirements of this Consent Decree. Except as otherwise provided in Section XVI (*Covenant of Plaintiffs*) of this Consent Decree, this Consent Decree shall not be construed as a covenant not to sue, release, waiver or limitation of any rights, remedies, powers and/or authorities, civil or criminal, which EPA or GAEPD has under RCRA, or any other statutory, regulatory or common law enforcement authority of the United States or the State of Georgia.

55.     Except as otherwise provided in Section IV (*Objectives*) and Section VI (*Work To Be Performed*) of this Consent Decree, this Consent Decree and compliance by Renessenz with the terms of this Consent Decree shall not relieve Renessenz of its obligations to comply with RCRA or any other applicable local, state or federal laws, regulations and permits.

56.     This Consent Decree is not intended to be nor shall it be construed as a permit or permit modification. Except as otherwise provided in this Consent Decree, this Consent Decree does not relieve Renessenz of any obligation to obtain and comply with any local, state or federal permits, and the United States and the State reserve the right to impose any permit requirement within their respective authority.

57.     EPA and GAEPD reserve the right to halt work and/or perform any portion of the work consented to herein or any additional site characterization, study, and response/corrective actions as they deem necessary to protect public health and the environment. EPA and GAEPD reserve their rights to seek reimbursement from Renessenz for all costs incurred by them related to halting or performing any such work at the Facility.

58. Except as otherwise specified in this Consent Decree, Renessenz does not waive any right, defense or claim it has.

59. This Consent Decree does not limit or affect the rights of Renessenz, the State or the United States with respect to any third parties.

## XVI. COVENANT OF PLAINTIFFS

60. In consideration of the Work that will be performed by Renessenz under the terms of the Consent Decree, and except as specifically provided hereinafter in this Section XVI (*Covenant of Plaintiffs*), the United States and the State covenant not to sue or to take administrative action against Renessenz, its officers, directors and employees, for claims specifically alleged in the Plaintiffs' Complaint. This covenant not to sue is expressly conditioned upon the complete and satisfactory performance by Renessenz of its obligations under this Consent Decree, including all Attachments hereto, and may be voided at any time prior to completion of the Work if Renessenz fails to comply with any of the requirements of this Consent Decree. This covenant not to sue extends only to Renessenz, its officers, directors and employees, and does not extend to any other person.

61. Subject to the covenant not to sue in the immediately-preceding Paragraph, the United States and the State retain all authority and reserve all rights to take any and all actions authorized by law to protect human health and the environment. Except as otherwise provided herein, the entry of this Consent Decree and Renessenz's consent to comply shall not limit or constitute a waiver of any rights or remedies, or otherwise preclude the rights or remedies of the United States or the State, and this Consent Decree is without prejudice to the United States' and the State's rights, authorities and remedies, including but not limited to, (1) the right to impose any permit requirements, including Corrective Action requirements under Section 3004(u) and

(v) of RCRA, 42 U.S.C. § 6924(u) and (v) or comparable State of Georgia law; (2) the right to require action pursuant to Section 7003 of RCRA, 42 U.S.C. § 6973; (3) the right to pursue remedies available to the United States and GAEPD for any violation by Renessenz of this Consent Decree, or of any federal or State law, regulation, or permitting condition not specifically alleged in the Complaint and resolved by this Consent Decree; or (4) the right of GAEPD to pursue any rights, authorities or remedies under the statutes it administers. The State and the United States reserve authority to take any action authorized by law if there may be an imminent and substantial endangerment in connection with hazardous waste or hazardous constituents at or from the Facility.

62.     The rights reserved to the Plaintiffs include the right to disapprove of Work performed by Renessenz pursuant to this Consent Decree.

63.     Nothing in this Consent Decree is intended either to create any rights in or grant any cause of action to any person not a party to this Consent Decree, or to release or waive any claim, cause of action, demand, or defense in law or equity that any party to this Consent Decree may have against any person(s) or entity not a party to this Consent Decree.

64.     Except as provided herein, the Plaintiffs hereby reserve all statutory and regulatory powers, authorities, rights, remedies, both legal and equitable, civil, criminal, or administrative, including those that may pertain to Renessenz's failure to comply with any of the requirements of this Consent Decree or RCRA, including, without limitation, additional enforcement action and the assessment of penalties under Section 3008 of RCRA, 42 U.S.C. § 6928, against Renessenz, its officers and directors.

## XVII. COVENANT OF RENESSENZ

65.     Renessenz hereby covenants not to sue and agrees not to assert any claims or causes of action against Plaintiffs with respect to the allegations contained in the Complaint, actions or omissions expressly contemplated under Section VI (*Work To Be Performed*) herein and any of the Work required hereunder, or violations of environmental requirements that have been corrected to bring the facility into compliance with the law.  Renessenz further agrees not to seek indemnification or reimbursement of any funds expended in connection with its performance of the Work from any agency, department or instrumentality of Plaintiffs. Renessenz hereby reserves and retains any defense, cause of action, and right not explicitly waived in this Consent Decree.

## XVIII. MODIFICATION

66.     Except as specifically provided for herein, there shall be no modifications or amendments of this Consent Decree without written agreement of the parties to this Consent Decree and approval by this Court.  Any changes to the technical and schedule provisions set forth in any Appendix hereto, or in any approved deliverable, may be made without approval by the Court under the terms set forth in the respective Attachments, this Consent Decree, or upon written agreement between Renessenz, GAEPD and EPA

## XIX. RETENTION OF JURISDICTION

67.     This Court retains jurisdiction over both the subject matter of this Consent Decree and Renessenz for the duration of the performance of the terms and provisions of this Consent Decree, including its Attachments, if any, for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or

appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XII (*Dispute Resolution*) hereof.

68.     The Parties retain the right to seek to enforce the terms of this Consent Decree and take any action authorized by federal or state law not inconsistent with the terms of this Consent Decree to achieve or maintain compliance with the terms and conditions of this Consent Decree..

## XX.  COSTS

69.     Each party to this action shall bear its own costs and attorneys' fees in the actions resolved by this Consent Decree.

## XXI.  NOTICE REQUIREMENTS

70.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States and the State reserve the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to the entry of this Consent Decree without further notice.

71.     If, for any reason, the Court should decline to approve this Consent Decree in the form presented, then this agreement is voidable at the discretion of any party, and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XXII. TERMINATION

72.    This Consent Decree shall terminate upon motion filed by the Plaintiffs after all actions required to be taken by Defendant pursuant to the Consent Decree, including Work required under this Consent Decree and attachments hereto have been completed, provided that Defendant is in compliance with the terms of the Consent Decree, that Defendant has paid any accrued stipulated penalties, and that Defendant has certified in writing that it is in compliance with all the terms and conditions of this Consent Decree and any attachments thereto, as well as any GAEPD-issued Permit contemplated by the terms of this Consent Decree. If a post-closure permit is necessary pursuant to Paragraph 20 (*Post-Closure Obligations*), this Consent Decree shall not terminate until such time as a final, enforceable and non-appealable post-closure permit has been issued to Renessenz by GAEPD. In the event that Renessenz challenges a post-closure permit issued by GAEPD pursuant to O.C.G.A. § 12-8-73, this Consent Decree shall remain enforceable and in effect until all administrative and judicial challenges have concluded and until such time as a final, enforceable, and non-appealable post-closure permit has been issued to Renessenz.

73.    Within forty-five (45) days of receiving Defendant's certification of compliance, the Plaintiffs may file a motion with the Court seeking termination of the Consent Decree, unless Plaintiffs inform Defendant that they do not believe that compliance has been achieved. If the Plaintiffs dispute Defendant's full compliance, the Consent Decree shall remain in effect pending resolution of the dispute by the Parties in accordance with Section XII (*Dispute Resolution*) of this Decree, or by Order of the Court.

74.    No sooner than seventy-five (75) days after providing the certification of compliance to the Plaintiffs, pursuant to Paragraph 70, Renessenz may petition the Court for termination of the Consent Decree, provided Defendant has certified to the Plaintiffs and the

Court that it has satisfied each and every term and condition of this Consent Decree and attachments thereto and is in compliance with every GAEPD-issued Permit contemplated by the terms of this Consent Decree.

75.     IT IS HEREBY ORDERED that the foregoing Consent Decree be entered as an Order of this Court.

**FOR PLAINTIFF**
**UNITED STATES OF AMERICA:**


Dated: 11/11/14            _____
                                       Sam Hirsch
                                       Acting Assistant Attorney General
                                       Environment and Natural Resources
                                       Division
                                       United States Department of Justice


Dated: 11/17/14            _____
                                       Gabriel Allen
                                       Trial Attorney
                                       Environmental Enforcement Section
                                       United States Department of Justice
                                       P.O. Box 7611
                                       Ben Franklin Station
                                       Washington, D.C. 20044
                                       (202) 514-1032


Dated: 11/17/14            _/s/ Edgar D. Bueno_____
                                       EDGAR D. BUENO
                                       Assistant United States Attorney
                                       Chief, Civil Division
                                       Virginia Bar No. 41307
                                       U.S. Attorney's Office
                                       Post Office Box 8970
                                       Savannah, Georgia 31412
                                       (912) 652-4422
                                       edgar.bueno@usdoj.gov

**FOR THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY:**

Dated: _10/30/14_

MARY J. WILKES
Regional Counsel And Director
Office Of Environmental Accountability
U.S. Environmental Protection Agency,
Region 4
61 Forysth Street, S.W.
Atlanta, GA 30303 8960

Dated: _10/27/14_

GREGORY LUETSCHER
Associate Regional Counsel
U.S. Environmental Protection Agency,
Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303-8960

**FOR PLAINTIFF**
**STATE OF GEORGIA:**

SAMUEL S. OLENS
Attorney General

ISAAC BYRD
Deputy Attorney General

JOHN E. HENNELLY
Georgia Bar Number 347075
Senior Assistant Attorney General

Dated: _December 4, 2014_

_Elizabeth A. Monyak_

ELIZABETH A. MONYAK
Georgia Bar Number 005745
Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: 404-463-0816
Facsimile: 404-651-6341
Email: emonyak@law.ga.gov

**FOR DEFENDANT**
**RENESSENZ, LLC:**

Dated: _____9/16/14_____          _~~TB Eberle~~_____
                                  TIMOTHY EBERLE

**Consent Decree**
*United States et al v. Renessenz, LLC*

Date: _____    _____

UNITED STATES DISTRICT JUDGE
Southern District of Georgia